## Case No. 4,181.

DUNSTAN v. The R. R. KIRKLAND.

[3 Hughes, 641.][1]

District Court, E. D. Virginia. Oct. 21, 1879.

Garnett & White and Sharp & Hughes, for libellant.

W. H. C. Ellis, for owner of the Kirkland.

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

HUGHES, District Judge. It seems plain to me from all the evidence in the case, that the tug was at fault in three respects, namely: 1st. She failed to give the usual signal of three long whistles, to announce her intention of leaving the wharf at which she had touched. 2d. She had no lookout in that end of her which was moving foremost. It is just as incumbent upon a steamer backing to keep a lookout well aft, as upon a steamer moving on to keep a lookout well forward. 3d. She did not "keep out of the way" of the sailing vessel, as she was required to do by the 20th rule of navigation, established by act of congress. See Rev. St. U. S. p. 818. Indeed the answer in this cause seems virtually to consider that the tug was in fault, not only in its admissions of fact, but in its omission to negative the implication of fault in the respects just set out. It is proper for me to notice an objection made in the argument by the learned counsel of the claimant, that, although the libel alleges that the sloop was bound for the Old Dominion wharf in Portsmouth, yet the proofs showed that she was aiming for Peters & Reed's wharf; and he claimed that there was a fatal variance between the allegata and probata of the plaintiff's case. I think the objection is untenable, for the reason that it was made too late, and that the variance is not material. The evidence shows that the two wharves lie next each other; the chart of the harbor shows that the course of a vessel sailing from an opposite point on the Norfolk side to one or the other of these wharves on the Portsmouth side would not vary half a point of the compass; and the proofs establish that the collision oc-

curred irrespectively of the circumstance that the sloop was moving on a course half a point away from the one pointing to the Old Dominion wharf adjoining Peters & Reed's. The variance in this case, therefore, is not material. The variance between the proofs and the allegations, whether of the libel in setting out its case, or of the answer in stating its case, in order to defeat either party to the pleadings, must be "essential in its character." The Washington Irving [supra]. Moreover, in order to entitle either party to the benefit of a variance, objection must be taken when the evidence is offered at the trial, and comes too late if made after the evidence is closed and the cause is under argument. Roberts v. Graham, 6 Wall. [73 U. S.] 578.

These matters being disposed of I come now to deal with the question of the amount of damages to be awarded the libellant, no objection being raised to the jurisdiction of an admiralty court to award damages to a person injured by the collision of two vessels against the vessel in fault. It must be confessed that the ascertainment of damages by a judge in a court of admiralty is not only an unpleasant but a difficult task, and is liable to great abuse. I regret that it cannot be referred to a jury of twelve men, that best of all tribunals for the assessment of damages between man and man. I shall approach a conclusion on the subject by careful steps, and endeavor to arrive at a result that will commend itself to the approval of any impartial, well-balanced, and practical mind. It was not shown in the evidence that the sloop was permanently injured by the collision. The injury was promptly repaired by the owner of the Kirkland, and I think an item for repairs can have no rightful place in the account of damages now to be made up. Nor is there anything due on the score of medical bills. These have been paid by the claimant, and were quite inconsiderable in themselves, amounting to less than $25.

We have, therefore, only to consider what is to be allowed for the three following items, viz., for pain and suffering; for loss of time and wages; and for permanent disability; these being the grounds of allowance for which we have precedents in the reported cases.

1. The suffering of the libellant in consequence of his wound, though doubtless severe for a few days, was soon greatly assuaged, and I think a liberal allowance on this score would be $250.

2. The loss in farming operations resulting to the libellant, while quite serious for a poor man, cannot in this case be estimated at the very high figures which we see reported in many cases in this country and England. True, the injury occurred at an important season of the second year of his three years' lease of the trucking farm on which he lived, which was a year in which

he expected, with reason, to make up in profits for the unremunerated labor and preparation of the first year. True that the legitimate expectation for this second year was, that the results should compensate for the labor and investment of both years. But yet I do not think I would be justified in estimating these profits from one man's labor, on a small farm of indifferent fertility, at more than $500 for the two years named.

3. We come, last, to the permanent effect of the injury sustained by the libellant, the damages allowable for which are the more difficult of ascertainment for the reason that they can be little other than conjectural. The knee upon which the bruises which were suffered concentrated, is now still enlarged and stiff, seriously impeding the movements of a laboring man. While the physician who attended the libellant and who testified at the trial would not express the positive opinion that it would continue so permanently, yet all that he said seemed to indicate a belief on his part that the probabilities were on the side of a permanently stiff and enlarged knee. The libellant is a poor man, with a large family to support. He is thirty-five years of age, and has a long "expectation of life." The conditions of his case are, therefore, such as appeal strongly for a liberal allowance. I therefore feel authorized by established precedents and by considerations of natural justice to award damages, on this score, to the amount of $1000.

A decree may, therefore, be taken for $1750.